## Singleton v. Commonwealth.

(Decided April 22, 1915.)

### Appeal from Jefferson Circuit Court (Criminal Division).

1.   Constitutional Law—Local or Special Legislation—Within the Meaning of Section 59 of the Constitution Forbidding the General Assembly to Pass Local or Special Acts.—It was not intended to interfere with the legislative power to create and define new

offenses and prescribe a punishment for them applicable to any person anywhere in the State who might be guilty of the offense so created and defined. When the Legislature creates an offense by a general law and provides by the general law for the punishment of any person committing this offense, the law operates equally and alike in all parts of the State and upon all persons and is not local or special legislation.

2. Statutes—Construction of—Superfluous Words May Be Stricken Out.—When the Legislature, through inadvertence or mistake, inserts useless and inappropriate words in an act that would be and is complete without them, they may be stricken from the act as surplusage and disregarded in the construction of the act.

3. Statutes—Construction of—Striking Superfluous Words from.—The words "of grand larceny" in Subsection 35 of Section 2739 of the Kentucky Statutes may be stricken from the section.

4. Constitutional Law—Cruel Punishment.—An act providing that any person who should unlawfully and without the consent of the owner take and operate a motor vehicle should be confined in the penitentiary for not less than two nor more than five years, did not impose a cruel punishment within the meaning of the Constitution.

5. Statutes—Construction of—Meaning of Word "Unlawful."—The word "unlawful" in the Statutes, making it an offense to "unlawfully take, drive or operate a motor vehicle without the consent of the owner" should be construed to promote the purpose of the act and confined to persons who wrongfully, illegally and purposely take and operate vehicles without the consent of the owner. A person who, under the honest mistake that he had the right to take the machine, or in good faith believed that he was the owner of it, would not be guilty of an unlawful taking within the meaning of the statute.

6. Statutes—Construction of—Meaning of Words.—Words in a statute should be construed so as to accomplish the purpose of the statute, although they might, in other connections, have a different meaning.

RICHARD P. DIETZMAN and MORTON T. MORAN for appellant.

JAMES GARNETT, Attorney General, and CHARLES H. MORRIS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL.—Affirming.

Under an indictment charging him with unlawfully taking and operating a motor vehicle, without the knowledge or consent of Burwell K. Marshall, the owner of the machine, the appellant was found guilty and his punishment fixed at an indeterminate period in the penitentiary of not less than two nor more than three years.

The indictment was found under Sub-section 35 of Section 2739 of the Kentucky Statutes, reading as follows:

"Any person who shall unlawfully take, drive or operate a motor vehicle without the knowledge and consent of the owner, shall be guilty of the offense of grand larceny, and upon conviction shall be punished by confinement in the penitentiary for a term of not less than two nor more than five years."

On this appeal it is urged as a ground of reversal that the sub-section under which the indictment was found and the conviction had is in violation of Section 59 of the Constitution. This section provides that "The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: * * * to regulate the punishment of crimes and misdemeanors, or to remit fines, penalties or forfeitures."

We do not think, however, that this section is local or special legislation within the meaning of the constitutional provision referred to. It is not a local or a special act, but an act of general application throughout the entire State. The purpose of Section 59 of the Constitution was to prevent the Legislature from enacting legislation that would be applicable only to particular localities or particular persons or things as distinguished from other localities or persons or things throughout the State. For example, the Legislature could not, without violating this section, enact a law for the punishment of a designated crime in Henry County. But it was not intended to interfere with the legislative power to create and define new offenses and prescribe a punishment for them applicable to any person anywhere in the State who might be guilty of the offense so created and defined. The words of the Constitution are to be read and understood according to their common usage and ordinary meaning, and when the Legislature creates an offense by a general law and provides by this general law for the punishment of any person committing this offense, the law operates equally and alike in all parts of the State and upon all persons, and is not local or special legislation. There are many general acts in the statutes creating and defining separate and distinct offenses and providing for their punishment, and many other statutes having general application and effect are con-

fined to described persons and conditions, but this limitation does not bring them under the meaning of the inhibition against local or special legislation.

As said in Stone v. Wilson, 19 Ky. L. R., 126: "Local or special legislation, according to the well-known meaning of the words, applies exclusively to special or particular places, or special and particular persons, and is distinguished from a statute intended to be general in its operation and that relating to classes of persons or subjects." To the same effect are: Winston v. Stone, 102 Ky., 423; The Safety Building & Loan Co. v. Eckler, 106 Ky., 115; Commonwealth v. Hillside Coal Co., 109 Ky., 47.

It is further argued that this court in Stratman v. Com., 137 Ky., 500, condemned as unconstitutional legislation similar to that here assailed. But we do not find ourselves able to agree with counsel that the rule announced in the Stratman case controls the decision of this one. In the Stratman case the legislation condemned was an act prohibiting the business of barbering on Sunday and fixing a penalty for its violation. At the time of the enactment of this law there was in force Section 1321 of the Kentucky Statutes making it unlawful for any person to do any work or business on Sunday, subject to certain exceptions, and it was held in the Stratman case that as a general law had been enacted covering the subject of such labor as barbering on Sunday, it was not competent for the Legislature to single out for special legislation the business of barbering and fix a penalty for that character of labor different from the penalty provided for in the general law. The court said that the general law was amply sufficient to punish the offense of barbering on Sunday, and so there was no reason why it should be put in a class by itself and a penalty imposed upon the barber more severe than and different from that imposed upon others who followed their usual vocations on Sunday.

When it is considered that there is no legislation except that now under consideration prescribing the punishment for the commission of the offense of unlawfully taking or driving an automobile without the consent of the owner, it is at once apparent that the principle announced in the Stratman case can have no application.

Another assigned objection to the legislation is that it describes the offense as grand larceny, when, in fact,

it is not grand larceny. It must be conceded that the words "grand larceny" have no place in this section, and it is difficult to understand why the Legislature should have used these words in connection with the offense created and defined, because the offense as described does not include the essential element of grand larceny, which is "the wrongful and fraudulent taking and carrying away by one person of the personal property of another with the felonious intent to convert it to his (the taker's) use without the consent of the owner." Bouvier's Law Dictionary, title "Larceny." The unlawful taking of property without the knowledge or consent of the owner in the manner described in this section is not grand larceny or larceny of any kind, and we have no statute in this State so describing grand larceny.

It is, therefore, perfectly plain that it is not grand larceny to "unlawfully take, drive or operate a motor vehicle without the consent of the owner." The Legislature simply created a distinct and new offense and through inadvertence or mistake misnamed it grand larceny. It would have been equally as appropriate to have called it robbery, burglary or embezzlement.

But the insertion of these useless and plainly inappropriate words does not invalidate the statute. It is complete without them. They may be stricken from the section as surplusage without affecting its meaning or departing from the purpose of the Legislature in its enactment. When this may be done it is well settled that useless and inappropriate words, having no relation to the subject matter of the statute, and evidently inserted through carelessness or mistake, may be disregarded in its construction. Southerland on Statutory Construction, Vol. 2, Sec. 383; Endlich on Interpretation of Statutes, Sec. 301; Gage v. City of Chicago, 201 Ill., 93; Paxton & Hershey Irrigating Co. v. Farmers' & Merchants' Irrigation Co., 45 Neb., 884, 50 Am. St. Rep., 585; Com. v. Grinstead & Tinsley, 108 Ky., 59; Sams v. Sams, 85 Ky., 396; Commonwealth v. Herald Publishing Co., 128 Ky., 424.

We, therefore, think the words "of grand larceny" should be treated as surplusage and the section read as if these words were not in it. Thus considering the section, we find no constitutional objection to it. It was competent for the Legislature to make it an offense to,

unlawfully and without the knowledge or consent of the owner, take, drive or operate a motor vehicle, and being competent to create the offense, it was, of course, competent to describe the penalty for persons committing it.

This legislation is further assailed on the ground that it imposes a cruel punishment in violation of Section 17 of the Bill of Rights, providing that "excessive bail shall not be required, nor excessive fines imposed, nor cruel punishment inflicted."

It is not necessary in this case that we should undertake to define the quantity of punishment that would be denominated as cruel within the meaning of this constitutional provision. To attempt it would be venturing into a question difficult of solution in any case. Weems v. United States, 217 U. S., 349, 54 L. Ed., 793. We feel at liberty to thus avoid this question because we are clearly of the opinion that the penalty imposed is not cruel punishment.

It is true that for many offenses involving the mere unlawful taking or injuring of personal property only a fine or imprisonment in the county jail has been imposed. But this legislation was intended to deal with a subject involving more serious consequences than the mere taking or injuring of personal property. The members of the Legislature that adopted it were undoubtedly informed through the public press of the numerous fatalities attending the reckless and unlawful use of motor vehicles by persons operating them without the consent of the owner, and concluded that the serious nature and frequency of the offense made it necessary to endeavor to prevent it by the imposition of a punishment that would deter persons from attempting to commit it.

It is and has been for several years a matter of general notoriety that persons who, unlawfully and without the consent or knowledge of the owner, take motor vehicles for the purpose of using them, operate them in such a reckless and negligent way as to not only imperil their own lives but the lives of other persons using the highways. And when reckless law-breakers, without regard to the lives of other people, and indifferent to their own safety, unlawfully operate motor vehicles on streets, highways and other public places, it is just that they should be severely punished, and the penalty imposed

by this legislation is none too great when the probabilities of danger to human life attending this use are considered.

Counsel for appellant also argue that the statute should be declared invalid because it does not describe with sufficient certainty what constitutes the offense. In presenting this objection, which is based on the use of the word "unlawful" in the statute, the argument is made that a person who by mistake or in the honest belief that the vehicle was owned by him, or through an error of judgment, took and operated a machine without the knowledge or consent of the owner, might be punished, as the taking and use would be unlawful in the sense that it was without the knowledge or consent of the owner. Therefore, it is said that persons innocent of any intentional wrong-doing or of any purpose to violate the law, or take or use property without the consent of the owner, might be and could be punished under this statute.

We do not, however, share the apprehensions of counsel that persons not really guilty of violating the spirit and purpose of this statute will be punished. It so rarely happens, if at all, in these days that innocent people are indicted and convicted for the commission of statutory or other offenses that it is hardly worth while considering that any such misfortune could occur. But aside from this, it must be assumed that the statute would be so administered as to promote the purpose of its enactment, which was to prevent and punish the wrongful and inexcusable taking and operation of these machines. The word "unlawful" as used in this section should be construed so as to accomplish the purpose of the statute and be confined to those persons who wrongfully, illegally and purposely take and operate motor vehicles without the knowledge or consent of the owner. Com. v. Youngblut, 159 Ky., 87. This is the class of persons the statute was intended to punish, and to this class of persons we are very sure its application will be limited. A person laboring under an honest mistake that he had the right to take and use the machine, or a person who, in good faith, believed that he was the owner of it, would not be guilty of an unlawful taking within the meaning of the statute. It is true that evidence of a wrongful intent is not an essential element in this offense, but

neither would an honest mistake or good faith belief in the right to take and use it constitute the offense.

Upon the whole case, we think the judgment should be affirmed, and it is so ordered.