[Civil Nos. 2903, 2904, 2905, 2906. Filed May 6, 1930.]

[287 Pac. 440.]

PICKWICK STAGES CORPORATION, a Corporation, Appellant, v. R. M. WILLIAMS, Appellee. PICKWICK STAGES CORPORATION, a Corporation, Appellant, v. AMERICA WILLIAMS and R. M. WILLIAMS, Wife and Husband, Appellees. PICKWICK STAGES CORPORATION, a Corporation, Appellant, v. J. HOMER SMITH, as Administrator of the Estate of ROSE WILLIAMS, Deceased, Appellee. PICKWICK STAGES CORPORATION, a Corporation, Appellant, v. J. HOMER SMITH, as Administrator of the Estate of MORRIS L. K. WILLIAMS, Deceased, Appellee.

Messrs. Armstrong, Lewis & Kramer and Mr. William H. Westover, for Appellant.

Mr. H. H. Baker, Mr. R. N. Campbell and Mr. M. C. Spicer, for Appellees.

ROSS, J.—These four actions are for damages for personal injuries sustained in a collision between the automobile of plaintiff R. M. Williams and one of the busses of the Pickwick Stages Corporation. Both cars were proceeding westerly along the public highway leading from Phoenix via Yuma, Arizona, to California. When near the village of Mohawk, about 1 o'clock in the afternoon of December 4th, 1928, the bus overtook and collided with the Williams car. The latter was a seven-passenger Elcar sedan, and riding in it were R. M. Williams, seventy-eight years old, his wife America, seventy-six, their son Morris L. K., fifty-six, and his wife Rose, forty-eight. All were going from their home in Evansville, Indiana, to Pasadena, California, where they had a winter home. Morris was driving the Elcar. The bus was a thirty to thirty-three passenger coach,

pretty well loaded, powered with a Pierce Arrow motor, and was being driven by H. A. Lorang. The bus traveled on a regular schedule of about thirty-five miles per hour. As a result of the collision Morris was instantly killed, his wife so seriously injured that she died within a few hours after reaching a hospital in Yuma, R. M. received some slight injuries and his automobile was a total loss, and America was very seriously injured. Two of the suits are by J. Homer Smith, administrator, in behalf of the estates of Morris and Rose, one is by R. M. and the other by America in which her husband is formally joined as a party.

The four actions arising out of the same transaction or accident were by the court ordered tried at the same time and before the same jury. Separate verdicts were rendered and separate judgments were entered in favor of plaintiffs. Defendant moved for a new trial, which was denied in the suits prosecuted by the administrator, but granted as to the other two cases "but only as to the amount of damages." The appeal is from all the judgments and from the order denying a new trial in the administrator cases and the order limiting the issues in the new trials granted to the question of damages only.

Two assignments are urged. We state them in the language of appellant:

"1. The court erred in permitting the witnesses R. M. Williams and America Williams to testify, over the objection of the defendant, that shortly after the accident H. A. Lorang, the driver of the Pickwick stage, said to these witnesses: 'I am to blame for this; I am sorry.' "

"2. The court erred in instructing the jury as follows: 'And if you find that the defendant drove its stage at a speed in excess of thirty-five miles per hour, it was guilty of negligence, and if such negligence was the proximate cause of the injuries re-

ceived by the plaintiffs, it will be your duty to find for the plaintiff.' "

Under the first assignment it is contended that the statement of the driver Lorang, if made (a) was but an expression of opinion, (b) was not within the scope of his employment and therefore not binding upon appellant, and (c) was no part of the *res gestae*. Referring to the page of the transcript where the testimony objected to is extended, we find that the objections thereto were that such testimony was not a part of the *res gestae* and was not within the scope of the Lorang employment. There was no objection to it on the ground that it was the opinion or conclusion of the witness. Even though the testimony was objectionable on the ground that it was merely the opinion of the witness, this objection was not urged to the court and was not ruled upon and cannot be made the basis of error for the first time on appeal. *Central Copper Co.* v. *Klefisch,* 34 Ariz. 230, 270 Pac. 629. Error, especially in the admission of evidence, is directed at the court's rulings and is limited to the grounds urged against its admissibility when it was offered.

We will consider the other two objections to this testimony. The collision occurred when the bus attempted to pass the Elcar. At this point the road was fairly smooth, gravel surfaced, and twenty-four feet wide. The terrific impact tore the front axle and front wheels from the bus, turned the Elcar over twice and inflicted upon its occupants the injuries heretofore stated. Immediately some of the passengers on the bus, none of whom was seriously hurt, together with Lorang went to the Elcar and assisted the two survivors from the wreck, the other two having been thrown out of and clear of the car, as a result of the collision. It was while America Williams was being taken out of the wrecked car, or

immediately thereafter, she says, when Lorang made to her the quoted statement. The same statement was made by Lorang to R. M. Williams, according to the latter's testimony, on the way to Mohawk, where he and his wife were taken (Lorang going along) for first aid in an automobile that arrived on the scene right after the accident. The distance to Mohawk was three and one-half to four miles and Lorang testified that they left for Mohawk within three or four minutes after the accident and traveled at the rate of thirty to thirty-five miles in going there. The statement testified to by R. M. Williams could not have been made later than eight minutes after the accident and might have been made earlier.

The time element is always important in determining whether a statement or declaration should be admitted in evidence as a part of the *res gestae,* but it is not controlling. It need not be at the identical instant of the main occurrence any more than it is necessary that it be at the same place. Spontaneity is of more importance than either. It is said in 22 Corpus Juris, 461, section 549: ''In order for a declaration to be admissible as a part of the *res gestae,* it must be the spontaneous utterance of the mind while under the influence of the transaction, the test being, it has been said, whether the declaration was the facts talking through the party, or the party talking about the facts. The guaranty for truth is found in such a correlation between the statement and the fact of which it forms part as strongly tends to negative the suggestion of fabrication or invention, and a suspicion of afterthought will prevent the reception of the statement.''

The very fact that Lorang's utterance was inculpatory of himself and his principal refutes the thought that he might have been fabricating. It is natural to excuse or justify mistake rather than to

admit fault or assume responsibility. When the latter occurs, we think it may be fairly taken to be as an expression forced from the declarant by the pressure of the circumstances rather than the narrative result of afterthought. There is no ground for suspicion that Lorang deliberately assumed the blame contrary to the fact. If he had been inventing or fabricating, his utterances naturally would have been exculpatory of himself and his principal.

In *Benton* v. *Regeser,* 20 Ariz. 273, 179 Pac. 966, 968, the driver of the car was the agent of the defendant and his statement made shortly after the accident, at a hospital to which the injured had been moved, to the effect ''that the accident was his fault'' was admitted as part of the *res gestae*. This court, through Mr. Justice BAKER, said:

''We understand the rule to be that the declaration of an agent made at the time of a particular transaction which is the subject of inquiry, and while acting within the scope of his authority, may be given in evidence against the principal as a part of the *res gestae,* but it is equally well settled that the declarations of an agent made after the transaction is fully completed and ended are not admissible. 10 R. C. L., § 173; 16 Cyc. 1006. The authorities differ as to the instances in which such declarations should be admitted as against the principal. The weight of authorities, however, inclines toward leaving the question of admissibility of this class of testimony in a great measure to the discretion of the trial court. The facts are before him, and he has a better opportunity to determine whether testimony of this character is in fact a part of the things done, a part of the *res gestae,* than an appellate court.''

The same learned judge, in *Solice* v. *State,* 21 Ariz. 592, 193 Pac. 19, 20, again went into an examination of the authorities, and announced this general rule:

''We have examined a large number of authorities upon the abstract propositions involved in the rules

on which testimony is received or not received as part of the *res gestae*. These authorities satisfy us that the close connection in time between the statements or declaration and the act of which it is said to be a part is an element for consideration; that being close in point of time is not, however, all of the basis for receiving such evidence, and that the ultimate test is spontaneity or instinctiveness and logical relation to the main event; that the tendency of the modern cases is to be liberal in the reception of such testimony.''

The reasons assigned by the courts for admitting declarations or exclamations as a part of the *res gestae* are fairly uniform. The difficulty is in determining whether the circumstances under which the utterance was made bring it within the reason of the rule. It is apparent that the particular circumstances of each case, rather than precedents, should guide the courts in the application of the rule. Logically, therefore, the question as to whether a given statement or declaration falls within and forms a part of the *res gestae* should be left to the determination of the trial court. 3 Wigmore on Evidence, 2d ed., p. 744, § 1750; *Roach* v. *Great Northern Ry. Co.*, 133 Minn. 257, 158 N. W. 232. Counsel for appellant state that ''the modern trend of decisions seems to be to leave the admissibility of this class of testimony largely to the discretion of the trial court. The facts are before him, and he has a better opportunity to determine whether the testimony in this connection is in fact a part of the things done—a part of the *res gestae*—than an appellate court.''

But they say the court, in passing upon their motion for a new trial, announced that Lorang's statement was admitted as binding upon appellant and not as a part of the *res gestae*. What the court said in passing on the motion for new trial is not in the record. However, the objection at the trial, as heretofore stated, was that such statement was not a part of the *res gestae* and was outside of Lorang's

employment and therefore not binding upon appellant. We have said it was properly admitted as a part of the *res gestae* and the record, not disclosing that it was admitted upon any other ground, we think we should assume that the court's ruling was based upon that ground rather than some ground not disclosed by the record.

Whether Lorang's statement was incidental to his employment and binding upon his employer we do not deem it necessary to decide.

A number of witnesses testified that the Elcar just before and at the time of the accident was traveling well on the right-hand side of the road and that while it was thus traveling, the bus, without warning of any kind, overtook and bumped into it. On the contrary, a number testified that Lorang, the driver of the bus, some time before he attempted to pass the Elcar and again just before, blew his horn several times; that the Elcar veered from the center of the road, where it was traveling to the right side and then just as the bus speeded up to pass returned to the left side, at an angle of about forty-five degrees, where it was struck. The evidence left on both cars by the contact quite conclusively shows that it was a rear end collision. On the rear left bumper of the Elcar was a rubber burn, caused when the front right tire of the bus struck it. Also on the rear left fender of the Elcar was the imprint of the bus license plate, and the left side of the Elcar was compressed lengthwise evidencing a blow from the rear and not the side.

Appellant insists, however, that the tracks made by the cars after they collided tell the true story as to the positions they occupied in the road at the instant they came together. It is contended the tracks indubitably show that the Elcar was on the left side of the road; that the impact damaged its left hind wheel so that it ceased to revolve but dragged leaving a well-defined mark, and that this mark commenced

at least three feet to the left of the center of the road and extended to the place where the Elcar turned over on the right-hand side of the road. It is said that with this clear and unmistakable evidence of the location of the two cars after the accident, the court abused its discretion in admitting Lorang's statement. The trouble with appellant's reasoning is that it locates two cars *after* and not before the collision. It is very probable that the position in the highway of the car in the lead was before the impact very different from what it was after. Lorang says when he saw the collision was inevitable he cramped his car to the left as much as he could. It would naturally propel, at least momentarily, any object it struck in the same general direction it was headed, especially when the contact was an end one. It is not probable that the left hind wheel of the Elcar commenced to drag at the exact point of the impact. We think upon the whole evidence the court very properly submitted the issue of negligence to the jury.

It is contended that the instruction set out in the early part of this opinion is erroneous in that it took from the jury the question of plaintiffs' contributory negligence. Appellant concedes that at the place of the accident the highest speed allowed by law (section 1587, Rev. Code 1928) is thirty-five miles per hour and that if the stage was traveling at a speed in excess of thirty-five miles per hour it was guilty of negligence. But it is said that the rest of the instruction made it the duty of the jury to find for plaintiff, "thus instructing the jury, in effect, that it made no difference whether plaintiffs were guilty of contributory negligence or not they would be entitled to recover under this instruction." Since the court made the plaintiffs' right to recover contingent upon a finding that their injuries were proximately caused by the negligence of appellant, it may be doubted if the deduction made is permissible. The import of the in-

struction negatively stated was that "if such negligence" of defendant was not the proximate cause of the injuries no recovery could be had. If the instruction were capable of the construction contended for and was, standing alone, calculated to leave the impression in the minds of the jurors that plaintiffs should recover, even though they contributed to the accident and injuries, such impression was doubtless removed by the very next instruction, wherein the court said:

"You are instructed that if you should find from the evidence that the accident (caused—or) was proximately caused by the carelessness or negligence of Morris L. K. Williams, if any, then and in such event none of the plaintiffs can recover, and your verdict should be for the defendant."

When the instructions are taken as a whole, as they should be (*Ellis* v. *First Nat. Bank of Globe,* 19 Ariz. 464, 172 Pac. 281; *Inspiration Consol. Copper Co.* v. *Lindley,* 20 Ariz. 95, 177 Pac. 24), we think they fairly state the law applicable to the issues, as formed by the pleadings. The defendant did not plead contributory negligence. The answer asserted that the accident was caused by the sole negligence of the driver of the Elcar.

The judgments and orders appealed from are affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.